## ARTHUR *v.* MORRISON.

1. Veils manufactured of silk, and commercially known as "crape veils," and not otherwise, do not fall within the enumerating clause of the eighth section of the act of June 30, 1864 (13 Stat. 210), whereby "silk veils" are dutiable at sixty per cent *ad valorem*, but are within its concluding clause touching manufactures of silk, or of which silk is the component material of chief value, not otherwise provided for, and are, therefore, subject to a duty of fifty per cent *ad valorem*.

2. The designation of an article of commerce by merchants and importers, when it is clearly established, determines the construction of the tariff law when that article is mentioned.

3. The intent of Congress to impose, under the act of 1864, duties upon imported articles according to their commercial designation, and to recognize this rule of construing statutes, is manifest from the first section of the act of Feb. 8, 1875 (18 Stat. 307), which subjects to a duty of sixty per cent "all goods, wares, and merchandise not herein otherwise provided for, made of silk, or of which silk is the component material of chief value, irrespective of the classification thereof for duty by or under previous laws, or of their commercial designation."

4. A well-known rule of statutory construction remains in force until it shall be abolished by Congress.

ERROR to the Circuit Court of the United States for the Southern District of New York.

Morrison and others brought this suit to recover the sum exacted from them by Arthur, the collector of the port of New York, in excess of what they protested was the lawful duty upon certain imported veils.

The portion of the eighth section of the act of June 30, 1864, c. 171, 13 Stat. 210, applicable to the case, is as follows:

"That on and after the day and year aforesaid, in lieu of the duties heretofore imposed by law on the articles hereinafter mentioned, there shall be levied, collected, and paid, on the goods, wares, and merchandise enumerated and provided for in this section, imported from foreign countries, the following duties and rates of duties; that is to say, . . . on silk vestings, pongees, shawls, scarfs,

mantillas, pelerines, handkerchiefs, veils, laces, shirts, drawers, bonnets, hats, caps, turbans, chemisettes, hose, mitts, aprons, stockings, gloves, suspenders, watch-chains, webbing, braids, fringes, galloons, tassels, cords, and trimmings, — sixty per cent *ad valorem.* On all manufactures of silk, or of which silk is the component material of chief value, not otherwise provided for, fifty per cent *ad valorem.*"

The collector pleaded that the moneys sued for were a part of the lawful duty of sixty per cent *ad valorem* for " silk veils " imported by the plaintiffs. They replied, that the veils were not " silk veils," but a manufacture of silk, and were " crape veils ; " that at the time of the passage of the act of June 30, 1864, they were commercially known among importers and dealers, and were bought and sold, as " crape veils," and never otherwise, and were liable to a duty of fifty per cent *ad valorem* as a manufacture of silk. The defendant demurred to the replication. The demurrer was overruled, and judgment rendered for the plaintiffs. The defendant sued out this writ of error.

*Mr. Assistant-Attorney-General Smith* for the plaintiff in error.

*Mr. Edward Hartley, contra.*

MR. JUSTICE HUNT delivered the opinion of the court.

It was undisputed upon the pleadings that the veils in question were commercially known among importers and dealers, and were bought and sold, as " crape veils," and never otherwise.

The question of law thus presented is, whether veils, which are not commonly called " silk veils," but are veils manufactured of silk, and are known commercially as " crape veils," and not otherwise, are liable to a duty of sixty per cent.

The argument of the government is, that the statute in question is a comprehensive one, intended to include all articles made of silk, or of which silk is the component material of chief value, specifically enumerating in its first branch a variety of subjects on which should be imposed a duty of sixty per cent, and further providing, that on all manufactures from that material not otherwise provided for a duty of fifty per cent should be levied and collected. Silk veils, it is said, are specifically enumerated as being liable to a duty of sixty per

cent, and the articles in question being veils of which the material is silk, are within the enumerating clause of the statute.

If this were all, the argument would be a strong one. But the fact that the veils in question are universally known and recognized among merchants and importers as crape veils, and not otherwise, and are never called or known as silk veils, is to be taken into the account. Although crape is shown to be a material of silk, to which a certain resinous substance has been applied, neither the merchant nor the ordinary buyer understands them to be identical. Neither the merchant who should order a case of crapes and receive one of silk goods, or who should order silk and receive crape, nor the individual purchaser who should order a dress of silk and receive one of crape, or should order crape for mourning and receive silk, would deem that the order had been properly filed. The general understanding concurs in this respect with that of the trader and importer, and must determine the construction to be given to the language of the statute. Especially should this view prevail as to laws made for the government of the importer. His business is regulated by them; and it is but reasonable that, like the language of marine policies and the terms of the law-merchant, supposed to be especially applicable to this class, these laws should be construed as universally understood by the importer and trader. Obsolete words, or those whose meaning is differently understood by the writer and the reader, produce disorder and confusion. Importations from foreign countries are necessarily made with reference to the duties to be paid upon their entry into the ports of this country. If these are not reasonably uniform, and cannot be ascertained, the transaction of business will be impossible. No man can determine whether his venture will enrich him, or make him a bankrupt. In *Lattimer* v. *Smythe*, it is said, " Where general terms are used, the terms are to be taken in their ordinary and comprehensive meaning, unless it is shown that they have, in their commercial use, acquired a special and restricted meaning." 17 Int. Rev. Rec. 12. In that case, and in *Jaffray* v. *Murphy* (19 id. 143), which is to the same effect, the question arose under the silk section of the act of 1864.

In the present case, it is admitted by the demurrer that the goods in question are never understood by merchants and importers to be silk veils. They cannot, therefore, be said to fall within the enumerating clause of the statute, but come under the head of such as are not otherwise provided for, and are subject to the duty of fifty per cent only. *Homer* v. *The Collector*, 1 Wall. 486; *Reiche* v. *Smythe*, 13 id. 162; *Movius* v. *Arthur*, 95 U. S. 144; *United States* v. *Two Hundred Chests of Tea*, 9 Wheat. 430; *Elliott* v. *Swartwout*, 10 Pet. 137; *Curtis* v. *Martin et al.*, 3 How. 106; *Maillard* v. *Lawrence*, 16 id. 251.

In the last case, Mr. Justice Daniel says: "The popular or received import of words furnishes the general rule for the interpretation of public laws, as well as of private and social transactions; and when the legislature adopts such language to define and promulgate their action, the just conclusion must be, that they not only themselves comprehended the meaning of the language they have selected, but have chosen it with reference to the known apprehension of those to whom it is delivered, and for whom it is designed to constitute a rule of conduct, — namely, the community at large."

In *Curtis* v. *Martin et al.* (*supra*), Chief Justice Taney says: "The question brought up by this exception cannot now be considered an open one. In the case of *United States* v. *Two Hundred Chests of Tea* (9 Wheat. 430), the court decided, that in imposing duties Congress must be understood as describing the articles upon which the duty is imposed, according to the commercial understanding of the terms used in the law, in our own markets. This doctrine was reaffirmed in the case of the *United States* v. *One Hundred and Twelve Casks of Sugar* (8 Pet. 277), and again in 10 Pet. 151, in the case of *Elliott* v. *Swartwout*. It follows that the duty upon cotton bagging must be considered as imposed upon those articles only which are known and understood as such in commerce in the year 1832, when the law was passed imposing the duty."

That Congress intended duties under the act of 1864 to be imposed according to their commercial designation, and that it understood this to be the rule of construing statutes, is also manifest from the first section of the act of Feb. 8, 1875 (18 Stat. 307), upon the subject we are considering.

A duty of sixty per cent is there imposed " on all goods, wares, and merchandise, not herein otherwise provided for, made of silk, or of which silk is the component material of chief value, irrespective of the classification thereof for duty by or under previous laws, or of their commercial designation." It was, no doubt, within the power of Congress to abolish a well-known rule of construction, as it did in the act of 1875 ; but, until so abolished, it remained in force.

The case was well decided. The judgment must be affirmed; and it is

*So ordered.*