## Appeal of FIELD *et al.*

*(Circuit Court, N. D. Illinois.   June 8, 1892.).*

CUSTOMS DUTIES—PROPERTY SUBJECT TO DUTY—SILK VEILS.
   Silk goods, which, although made in the manner of laces, and having the substantial characteristics of laces, are not commercially known as "laces," but as "silk nets," "veilings," and "drapery nets," are dutiable under Schedule L, par. 414, of the customs act of 1890, as a manufacture of silk not otherwise provided for, and not as silk laces.

At Law.

*N. W. Bliss,* for appellants.

*Thos. E. Milchrist,* U. S. Dist. Atty., for the collector.

BLODGETT, District Judge.   This is an appeal from the board of general appraisers under section 15 of the customs administrative act of June 10, 1890.   The appellants imported to the port of Chicago silk goods, which the collector classed as silk "laces," and assessed the duty thereon at the rate of 60 per cent. *ad valorem.*   Appellants gave the collector notice of their dissatisfaction with his decision in classifying and assessing the duty on said goods, and thereupon the collector transmitted the invoices, papers, and exhibits connected with the entry of such goods for duty to the board of general appraisers at New York city.   The board of general appraisers, after an examination and hearing, rendered a decision affirming the action of the collector; and the appellants, being dissatisfied with such decision, applied to this court for a review of the questions of law and fact involved in the decision.   The record of the proceedings before the board of general appraisers, together with the evidence and exhibits before them, has been duly returned to this court, and on the application of the appellants further proof has been taken in the manner required by the statute, and the case brought to hearing before the court upon the return of the board of general appraisers, and the additional proofs taken.   The contention of the importer is that the goods in question are not known as "silk laces," but are commercially known by the trade as "silk nets," "veilings," and "drapery nets," and are dutiable as a manufacture of silk not otherwise provided for, at 50 per cent. *ad valorem,* under Schedule L, par. 414, of the customs act of October 1, 1890.   The board of general appraisers, in its opinion in the case, has gone very fully into the art of lace making, and the difference between the fabrics known as "laces" and "woven fabrics," and their conclusions in the matter are quite clearly expressed in the 2d, 6th, 7th, 8th, and 9th findings of fact, which form part of their opinion, which I quote as follows:

   "(2) The merchandise in question consists of plain and a variety of figured silk lace nets and veilings and silk lace drapery nets made on the lace machine, and distinguished by the hexagonal mesh."

   "(6) The hexagonal mesh is the essential feature, as it is the distinguishing characteristic of lace, the process of its formation being akin to knitting as it is the antithesis of weaving.

"(7) The presence of the hexagonal mesh in a textile fabric is conclusive of the fact that it is a lace, whereas its absence is equally conclusive of the fact that it is a woven fabric; that is to say, not a lace.

"(8) The claim that the merchandise in controversy is commercially known as 'nets' and 'veilings' and 'drapery nets,' and never as 'lace nets,' 'lace veilings,' 'lace drapery nets,' or as 'laces,' is not, in our opinion, clearly established, and we hence find that it consists of laces."

It will be seen that the test applied by the board of general appraisers to these goods for determining the class to which they belong for the purpose of duty is that they contain the hexagonal mesh, which they find to be the distinguishing characteristic of lace.   The conclusion of the board, deduced from the study of the art of lace making, either by hand or machinery, is based largely upon definitions of lace and their differentiation of lace from woven fabrics.   The proof in the case from expert persons skilled in the trade and with long and extensive experience in the business is that these goods are not known as "laces," but are commercially known as "nets" and "veilings," and "drapery nets." There is no dispute between the parties but that the goods are a manufacture of silk; nor is there any dispute that they are made upon what is known as a "lace machine;" that is, a machine which nets or knits the meshes and figures upon them.   While I have no doubt that these goods respond to the general designation or description of lace, not necessarily because they show the hexagonal mesh, but because they are made in the same manner as most of the machine-made laces, I am also satisfied, as I have before said, from the proof, that these goods are not commercially designated as "laces," but are known to the trade by the name of "sik nets," "veilings," etc.; and, recognizing the rule "that the commercial designation of an article among traders and manufacturers, where such designation is clearly established, fixes its character for the purpose of the tariff laws," I see no escape from the conclusion that these goods should have been classed as dutiable under clause 414 as a manufacture of silk not otherwise specially provided for.   This rule has been so long acted upon as to hardly require the citation of authorities in its support.   It was clearly laid down in *U. S.* v. *200 Chests of Tea*, 9 Wheat. 430, followed in *Barlow* v. *U. S.*, 7 Pet. 409, and again applied in *Arthur* v. *Morison*, 96 U. S. 108.   In that case goods were imported and assessed for duty as "silk veils."   The importer insisted that, although the veils were a manufacture of silk, they were not commercially known as "silk veils," but were commercially known as "crepe veils," and the supreme court, in an elaborate opinion, sustained the contention of the importer, the court saying:

"The question of law thus presented is whether veils which are not commonly called 'silk veils,' but are veils manufactured of silk, and are commercially known as 'crepe veils,' and not otherwise, are liable to a duty of 60 per cent.   The argument of the government is that the statute in question is a comprehensive one, intended to include all articles made of silk, or of which silk is the component material of chief value, specifically enumerating in its first branch a variety of subjects on which should be imposed a duty of 60 per cent., and further providing that on all manufactures from that material

not otherwise provided for a duty of 50 per cent. should be levied and collected. Silk veils, it is said, are specifically enumerated as being liable to duty of 60 per cent., and the articles in question, being veils of which the material is silk, are within the enumerating clause of the statute. If this were all, the argument would be a strong one. But the fact that the veils in question are universally known and recognized among merchants and importers as 'crepe veils,' and not otherwise, and are never called or known as 'silk veils,' is to be taken into account. Although crepe is shown to be a material of silk to which a certain resinous substance has been applied, neither the merchant nor the ordinary buyer understands them to be identical. Neither the merchant who should order a case of crepes and receive one of silk goods, or who should order silk and receive crepe, nor the individual purchaser who should order a dress of silk and receive one of crepe, or should order crepe for mourning and receive silk, would deem that the order had been properly filled. The general understanding concurs in this respect with that of the trader and importer, and must determine the construction to be given to the language of the statute."

It seems to me that the error of the board of general appraisers lies in their conclusion that, because the goods in question are made after the manner of laces, and have the substantial characteristics of laces, therefore they are commercially laces, while I think the weight of proof clearly shows that they are not commercially known as "laces," but as "nets" and "veilings" and "drapery nets." It is due to the board of general appraisers to say that the additional proof taken under the order of this court since the appeal is much more full and convincing as to the commercial designation of these goods than that made by the proof before the commission. For these reasons the decision of the board of general appraisers is reversed, and the collector of the port of Chicago is ordered to reliquidate the entries according to this decision.