Shipman, Circuit Judge.
The question in this case is whether the hemstitched cotton handkerchiefs imported in August, 1890, and September, 1890, by the respondents, were properly classified by the collector under paragraph 325 of Schedule I (cotton and cotton goods) of the tariff act of March 3,1883, or whether they should have been classified under paragraph 324 of that schedule. The paragraphs read as follows:
“324. Cotton cords, braids, gimps, galloons, webbing, cording, suspenders, braces, and all manufactures of cotton not specially enumerated or provided for in this act, and corsets of whatever material composed, 35 per centum ad valorem.
“325. Cotton laces, embroideries, insertings, trimmings, lace curtains, cotton damask, hemmed handkerchiefs, and cotton velvet, 40 per centum ad valorem. ”
It appears, by explicit and uncontradicted testimony,—the testimony of those conversant with the commercial designations of cotton goods and handkerchiefs,—that, at and prior to the time of the passage of the tariff act in question, there was a distinct nomenclature in the trade for hemmed handkerchiefs and hemstitched handkerchiefs, under which articles like the importations in controversy were known to and bought and sold in the trade exclusively as hemstitched handkerchiefs, while other articles, embracing a large variety, were known to and bought and sold in the trade exclusively as hemmed cotton handkerchiefs, the two classes being distinguished by the presence.or absence of ornamentation at the edge of the hem. It was also proved that the trade name “ hemmed handkerchiefs” excluded hemstitched handkerchiefs, although the latter were in fact hemmed, and that a hemstitched handkerchief was not, in commercial language and designation, a hemmed handkerchief. The two classes were distinct and separate. No testimony was offered by the collector to vary or weaken the force of those facts, and it is to be presumed that no such testimony was available. The contention for the appellant is that the handkerchiefs in controversy, being hemmed as well as ornamented, are specially enumerated or provided for by paragraph 325; that the term “hemmed handkerchiefs” is a descriptive term, meaning handkerchiefs, not in the piece, but hemmed, and was not used in the paragraph in question in a technical or commercial sense.
The tendency of the decisions of the supreme court has long been to hold with strictness that, when an article of commerce is designated in a tariff act by a specific name, or by general terms, the clearly estab *123 lished commercial meaning of such name or designation, at the time when the tariff act was passed, determines the construction of the act with respect to that article, (Arthur v. Morrison, 96 U. S. 108; Arthur v. Lahey, Id. 112; Worthington v. Abbott, 124 U. S. 434, 8 Sup. Ct. Rep. 562,) until it was said by Mr. Justice Bradley in Robertson v. Salomon, 130 U. S. 412, 9 Sup. Ct. Rep. 559, that commercial designation “is the first and most important designation to be ascertained in settling the meaning and application of tariff laws.” Very likely, advantage will be attempted to be taken of the breadth of this declaration to endow mere subordinate fanciful commercial names with an undue importance, but such an attempt is not apparent in the present case.. It must be evident that goods cannot be withdrawn from the operation of a general classification, according to material, by designating them by particular names, which merely indicate a subdivision of the general class named in the statute.
This being the general rule for the construction of terms or names in the tariff acts, if congress desires to classify articles by terms of general description, it can manifest such intent by the use of descriptive words which exclude any restricted meaning, and, if such language is not used, it is fair to presume that the intent of the legislature was in harmony with the rule of construction which the courts have declared, and which is:
. “Where general terms are used, the terms are to be taken in their ordinary and comprehensive meaning, unless it is shown that they have, in their commercial sense, acquired a special and restricted meaning. ” Arthur v. Morrison, supra.
The sole question in this case is, were the words “hemmed handkerchiefs” used in their trade meaning, and are they denominative, or were they used in a more general sense, and are they descriptive? It is true that some of the terms used in paragraph 325 are apparently terms of general description, and have been held, in previous statutes, to be designations of quality and material. Barber v. Schell, 107 U. S. 617, 2 Sup. Ct. Rep. 301. It is therefore argued that the word “hemmed” is also to be considered descriptive, and not to be used in a commercial sense. Hemmed cotton handkerchiefs were not specifically named in the cotton schedule in the Revised Statutes, but it was thought best to specifically enumerate them in the act of 1883, and they were included by name in the paragraph which had long been in existence in the same general form. The fact that the article was put into this paragraph does not seem controlling, but in view of the decisions which have been quoted, and of the manifest importance that the rule of construction of tariff acts shall be, so far as is practicable, uniform and not easily disturbed by exceptions, I think that the term “hemmed handkerchiefs,” which was introduced into the paragraph, should be construed in accordance with the principle which has been stated.
It is argued that it is unreasonable to suppose that congress intended to impose a higher duty upon cotton handkerchiefs having a plain, cheap hem than upon those which were prevented from raveling in a more ornamental and expensive manner. It is true that the construction makes *124 apparent a lack of symmetry in the rates of duty, but the court cannot attempt to adjust into symmetry the various provisions of a statute which must include- many details, by creating exceptions to a well-settled, and, on the whole, satisfactory, rule of interpretation of the statute relating to the revenue from imports. In accordance with this rule, the term “hemmed handkerchief” is a commercial term, and does not mean a handkerchief which has been cut from the piece, and has been in fact hemmed, but it means the article commercially known as a “hemmed handkerchief,” which definition excludes the hemstitched article. Indeed, if the distinctions made in common speech are looked at, it is probable that the word “hemmed” Would generally be regarded as indicating a different article from the one known as “hemstitched.” The term appropriately describes a class of articles in which, by the commercial nomenclature, hemstitched handkerchiefs are not included, and i’esort must therefore be had to other statutory provisions to ascertain the proper duty upon the excluded articles. We agree with the opinion of the circuit court that the importation in suit should have been classified under section 324. The judgment is affirmed.