In re WISE (fifteen cases).

(Circuit Court, N. D. California. December 10, 1898.)

Nos. 11,984–11,998.

1. CUSTOMS DUTIES—CLASSIFICATION—"ENUMERATED" ARTICLES.
   To place an article among those designated as "enumerated," so that it does not come within the operation of the similitude clause of a customs law, it is not necessary that it should be specifically mentioned.

2. SAME—CHINESE SHOES.
   Paragraph 456 of the tariff act of 1890, covering "boots and shoes made of leather," is applicable, in the absence of any restrictive words, to all shoes made of leather, notwithstanding the fact that other materials are used in greater quantity; and Chinese shoes manufactured from various materials, including leather, cotton, silk, thread, and felt, but of which leather is the component material of chief value, are dutiable under such paragraph, and not under paragraph 461, as articles, of which leather is the component part of chief value, not specially provided for.

This is an application by the United States for the review of a decision of the board of general appraisers as to the classification of certain merchandise imported by Chee Chong & Co.

Samuel Knight, Asst. U. S. Atty., for Collector Wise.

Page, McCutchen & Eells, for importers.

HAWLEY, District Judge. The merchandise in question consists of what is generally known as "Chinese shoes." The collector classified the merchandise as cotton wearing apparel, of which cotton was the component material of chief value; and duty thereon was exacted at 50 per cent. ad valorem, under paragraph 349 of the McKinley tariff act of October 1, 1890. The importers duly protested against the action of the collector to the board of general appraisers at New York, and in their protest stated:

"The grounds of our objections are that said shoes are composed of several materials, of which leather is the component material of chief value. We claim that they are entitled to entry at 25 per cent. ad valorem, as shoes of leather, under paragraph 456, Act Oct. 1, 1890, or at 35 per cent. ad valorem, under paragraph 461 of the same act."

Included in the protest were several cases of merchandise, which the board of appraisers found consisted of "cotton," and others of "silk," as the "component material of chief value"; and as to these the appraisers affirmed the decision of the collector. No question is involved in relation to the duty on such merchandise. The respective parties have stipulated "that, in all cases where the board of appraisers have sustained the action of the collector herein, such decisions shall stand unaffected hereby." The appraisers decided "that the shoes, of which leather is a component material of chief value, are dutiable at 25 per cent., under paragraph 456." Is this decision correct? Are the shoes dutiable under paragraph 456, as contended for by the importers, or are they dutiable, as contended for by the government, under paragraph 461, or, if not specially provided for in this act, are they dutiable under this section by virtue of the "similitude clause" of section 5 of the tariff act? These provisions of the act, in so far as they are material to the question herein involved, read as follows:

"(456) * * * Boots and shoes made of leather, 25 per centum ad valorem."

"(461) Manufactures of leather, fur * * * or of which these substances or either of them is the component material of chief value, all of the above not specially provided for in this act, thirty-five per centum ad valorem."

"Sec. 5. * * * And on articles not enumerated, manufactured of two or more materials, the duty shall be assessed at the highest rate at which the same would be chargeable if composed wholly of the component material thereof of chief value; and the words 'component material of chief value' wherever used in this act, shall be held to mean that component material which shall exceed in value any other single component material of the article; and the value of each component material shall be determined by the ascertained value of such material in its condition as found in the article. If two or more rates of duty shall be applicable to any imported article it shall pay duty at the highest of such rates."

No evidence has been presented that the shoes in question are commercially known as "shoes made of leather." There is no evi-

dence as to their particular character or designation, except an exhibition of the shoes themselves. The respective parties have, however, stipulated, for the purpose of this case, "that it shall be considered as proven herein that the merchandise involved in these suits are Chinese shoes, manufactured from various materials, such as leather, cotton, silk, thread, and felt, of which shoes, leather is the component material of chief value."

The similitude clause applies only to nonenumerated articles. Arthur v. Fussfield, 96 U. S. 128. I am of opinion that the similitude clause has no application, and that the article is an enumerated article, within the meaning either of paragraph 456 or paragraph 461 of the tariff act. The law is well settled that to place an article among those designated as "enumerated," so as to take it out of the operation of the similitude clause of the customs revenue laws, it is not necessary that it should be specifically mentioned. Arthur's Ex'rs v. Butterfield, 125 U. S. 71, 76, 8 Sup. Ct. 714; Mason v. Robertson, 139 U. S. 624, 626, 11 Sup. Ct. 668; Liebenroth v. Robertson, 144 U. S. 35, 40, 12 Sup. Ct. 607, and authorities there cited.

It is argued on behalf of the collector that, if congress meant to include Chinese shoes in paragraph 456, it would have used language more appropriate therefor,—as, for instance, by inserting the phrase "or of which leather is a component part," or "of which leather is the component material of chief value," or "made wholly or in part of leather." There are doubtless many cases where such reasons could be, and have been, used; but I fail to see any great force in the argument as applied to the present case, because the same argument could be as effectively urged as a reason why paragraph 461 does not apply, in that it does not state that its provisions should apply to "shoes not made principally of leather," as well as to other articles, not hereinbefore specifically enumerated, of which leather "is the component material of chief value." It may be that there is no good reason why congress should not, as it readily could, have used language that would more clearly have expressed the intention. But when such words are left out of a statute, either by oversight, design, or mistake, the courts, as a general rule, have no power to supply the omission, but are bound to take the statute as congress made it, and interpret it in the light afforded by the language used. As was said by Mr. Justice Story in Smith v. Rines, 2 Sumn. 338, Fed. Cas. No. 13,100, "It is not for courts of justice, proprio marte, to provide for all the defects or mischiefs of imperfect legislation." An examination of the tariff act shows that in certain paragraphs there are certain articles named, descriptive in their general character, and then paragraphs containing other descriptions which might, if they stood alone, be sufficient to cover the same articles that are in other paragraphs either generally or specifically described. There are many decisions which refer to this condition of the tariff act. Arthur v. Morrison, 96 U. S. 108; Same v. Unkart, Id. 118; Same v. Stephani, Id. 125; Same v. Sussfield, Id. 128; Solomon v. Arthur, 102 U. S. 208, 212. There is no inflexible rule in the interpretation of statutes. Courts, in attempting to construe statutes, are often "born unto trouble as the sparks fly upwards." It has been said of the statute of

frauds of England, which was at the time of its adoption considered perfect in its parts, and has been since adopted in most, if not all, the states of the Union, that it took more decisions of the courts than there are letters in the statute to determine what it really meant. In fact, there is still some doubt existing in the minds of many jurists and authors as to whether it really has been, or ever will be, made perfectly clear. Lawson, in his Leading Cases Simplified (page 56), says:

"As was to be expected, the courts were soon called upon to interpret the different provisions of this statute. In fact they have kept at it for 200 years, and are by no means through yet. Indeed, one may say that they have just got a good start."

Our revenue, tariff laws, and customs duties are not, however, allowed to remain long enough upon the statutes to enable courts to "get a good start" at their interpretation. They are, by the necessities of the times, condition of the country, and change of administrations, being constantly changed. Whole clauses are removed, new classifications made, and new phrases and sentences inserted in many of the paragraphs. This diversion has been indulged in simply to faintly illustrate the innumerable doubts and differences of opinion constantly arising between the collectors and importers in relation to the customs duties imposed by the tariff act. This state of things is unavoidable.

The fact is that an act of congress must be construed with special reference to its objects and purposes, according to the true intent and meaning of its terms; and, when the legislative intent is ascertained, that, and only that, is to be our guide in interpreting it. In the very nature of the subject of imposing duties on imported articles, it would be exceedingly difficult, if not impossible, to make a specific descriptive designation of each article that might be thereafter imported. Chinese shoes of the same or similar character as are in issue in this case have been imported into this country for more than 30 years. Congress, however, has never deemed them of sufficient importance to give them a specific designation under the head or name of "Chinese shoes." My attention has been called to but one case (that of Swayne v. Hager, 37 Fed. 780) where the subject is discussed. But that case sheds but little, if any, light upon the matter presented in this case. There the collector classified the shoes as "wearing apparel," under the fourteenth paragraph of Schedule K of the act of March 3, 1883 (22 Stat. 509); and the importers claimed they came under the seventh paragraph of the same schedule, "all manufactures of cotton not specially enumerated or provided for in this act." The court found that cotton constituted the most valuable part of the material, and sustained the claim of the importers. The paragraphs in the McKinley act are different. Under paragraph 456 we have "boots and shoes made of leather"; and the stipulation is that the shoes in controversy are manufactured from various materials, such as leather, cotton, silk, thread, and felt, of which leather is a component material of chief value. From an inspection of the shoes, it might be said that they are not, strictly speaking, leather shoes; but they are shoes made in part, at least, of leather, and leather is a component material of chief

value. When congress used the term "shoes made of leather," it could not have intended, as suggested by counsel, that it meant only "shoes which are entirely made of leather." Such a restricted meaning cannot, of course, be accepted by the courts. The term "shoes made of leather" is descriptive, rather than denominative. It refers not to any particular class of shoes, but to all kinds of shoes made of leather. There are many different kinds of shoes made of leather which are composed of as great a variety of materials as the Chinese shoes. Cotton, felt, thread, and iron or steel nails are found in all. In some, elastic, wood, paper, buttons, and bone are also found. And in some of these shoes it may, perhaps, with some degree of accuracy, be said that the articles therein found are no more disproportionate, in value, at least, to the leather, than the articles found in the Chinese shoes. If, therefore, leather is the predominant article of greatest value, or a component part of chief value, 1 see no substantial reason why that test should not be applied, rather than the one claimed on behalf of the collector,—that it should be the article forming the greatest bulk, or covering the most space. The general description of "shoes made of leather," in section 456, for the reason stated, seems to me applicable, in the absence of any restrictive words, to all shoes made of leather, notwithstanding the fact that other materials are used, of a greater quantity or bulk. I am of opinion that the general description should be given controlling effect.

Of the cases cited by counsel, the one bearing the closest analogy to the case in hand is Robertson v. Glendenning, 132 U. S 158, 10 Sup. Ct. 44. There the articles were embroidered linen handkerchiefs. The question was whether the duty to be paid came under the eighth paragraph of Schedule J of the act of 1883, which covers "handkerchiefs," and also "other manufactures of flax, jute, or hemp, or of which flax, jute, or hemp shall be the component part of chief value, 35 per cent. ad valorem," or under the eleventh paragraph of the same schedule, which specified "flax or linen laces and insertings, embroidery, or manufactures of linen, if embroidered or tamboured and not specially enumerated or provided for in this act, 30 per cent. ad valorem." From the samples introduced in evidence, it appeared that the body of the cloth was linen cambric made of flax, and known in trade as "embroidered handkerchiefs"; that the embroidery was a substantial part of the handkerchief, and was done with cotton. The contention of the government was that the provisions of the statute should be construed as if they read, "On linen handkerchiefs 35 per cent. ad valorem, but if embroidered 30 per cent. ad valorem." The court declined to accept this construction, and held that where an article is designated by a specific name, and a duty imposed upon it by such name, general terms in a later part of the same act, although sufficiently broad to comprehend such article, are not applicable to it. See, also, Arthur v. Lahey, 96 U. S. 112, and authorities there cited; U. S. v. Wolff, 69 Fed. 327. The decision of the board of appraisers is affirmed.