### VOIGHT v. MIHALOVITCH.

(Circuit Court, S. D. Ohio, W. D.   December 19, 1899.)

#### No. 5,227.

1. CUSTOMS DUTIES—CLASSIFICATION—CHERRIES IN ALCOHOL.

Certain cherries imported in casks, in a surrounding fluid containing alcohol added for the purpose of resisting fermentation and decay, the cherries being an inedible variety, intended to be used in the manufacture of cherry juice, are specially provided for in paragraph 263, Schedule G, § 1, c. 11, Tariff Act July 24, 1897, 30 Stat. 171 (U. S. Comp. St. 1901, p. 1651), as "fruits preserved in * * * spirits," and are not dutiable under paragraph 299, Schedule H, § 1, c. 11, of said act, 30 Stat. 174 (U. S. Comp. St. 1901, p. 1655), either as "cherry juice" or as an unenumerated article similar thereto, "either in material, quality, texture, or the use to which it may be applied," under section 7 of said act, 30 Stat. 205 (U. S. Comp. St. 1901, p. 1693).

Appeal by Henry Voight, surveyor of customs at the port of Cincinnati, Ohio, from a decision of the Board of General Appraisers (G. A. 4296) on certain merchandise imported by Mihalovitch, Fletcher & Co.

The merchandise in controversy consists of the sour, wild red cherries known in Germany as "Kirschen Sauer," imported in casks, in a surrounding fluid containing more than 10 per cent. of alcohol, that was added for the purpose of resisting fermentation and decay. The cherries are not intended or fit for human consumption, but were imported to be used in the manufacture of the cherry juice of commerce. The importers entered the goods for duty under the provision in paragraph 263, Schedule G, § 1, c. 11, Tariff Act July 24, 1897, 30 Stat. 171 (U. S. Comp. St. 1901, p. 1651), for "fruits preserved in * * * spirits"; but the surveyor of customs at the port of Cincinnati classified them as "cherry juice," under paragraph 299 of said act, on the ground that they are not enumerated in the tariff, and under section 7 of said act, 30 Stat. 205 (U. S. Comp. St. 1901, p. 1693), which provides that unenumerated articles "shall pay the same rate of duty which is levied on the

enumerated article which it most resembles," "either in material, quality, texture, or the use to which it may be applied," were dutiable as cherry juice because they most resembled that article, within the meaning of said section 7. His view that the cherries are not enumerated in paragraph 263 was based on the theory that the expression in that paragraph, "fruits preserved in spirits," was a term of commercial designation, and did not include the cherries under consideration; also that said paragraph 263 covered only such fruits as are edible and intended for table consumption, and, under the rule of noscitur a sociis, these inedible cherries would be excluded. The Board of General Appraisers, on protest by the importers, reversed the decision of the surveyor, directing that the merchandise be reclassified as originally entered by the importers. The surveyor appealed.

William E. Bundy, U. S. Atty., and Harlan Cleveland, Special Asst. U. S. Atty., for the surveyor.

J. C. Harper and Judson Harmon, for the importers.

CLARK, District Judge. The decision of the Board of United States General Appraisers is before this court for review. There is no such conflict in the facts in this case, so far as it depends upon facts directly in issue and to be decided, as to require a statement of the case or a discussion in detail of the evidence. It may be said in a general way that the evidence to be considered consists of the facts and circumstances as they existed at the time of the enactment of the tariff act in question (Act July 24, 1897, c. 11, 30 Stat. 151, U. S. Comp. St. 1901, p. 1626), and those facts and circumstances are intended to enlighten the inquiry as to the true interpretation of those provisions of the tariff act in question. This is, in general, the purpose of the evidence in the case, and in that view the conflict is not serious or very substantial. It is true the experts differ somewhat sharply in opinion, but the importance of that difference is not very great, and such a conflict is quite common, as the wide experience of counsel on both sides has led them to admit. The circumstances thus brought out as facts, and intended to throw light upon the inquiry, are, among others, the trade history of the article in question, its growth, method, and purposes of manufacture, and its uses, the history of importations like this, the previous tariff legislation upon the subject, decisions of the board of appraisers, the practice of customs officers, and the disputes as to proper classification. These are facts brought out for their supposed value as bearing on a proper interpretation of the existing tariff act. The primary question directly in issue and to be decided is whether the imported article in question is "fruit preserved * * * in spirits," within the meaning of paragraph 263, Schedule G, § 1, c. 11, of the tariff act of July 24, 1897, 30 Stat. 171 (U. S. Comp. St. 1901, p. 1651). The contention, as I understand it, is not that the article is the cherry juice of commerce, and subject to classification under paragraph 299, Schedule H, § 1, c. 11, of the tariff act of July 24, 1897, 30 Stat. 174 (U. S. Comp. St. 1901, p. 1655), instead of paragraph 263, but that in its condition as imported, and in its chemical elements, and considered in the light of the only purposes for which it is used, it is so similar to cherry juice as to remove its classification from paragraph 263, and render it subject to classification under the similitude clause of paragraph 299, section 7 of the act, 30 Stat. 205 (U. S. Comp. St. 1901, p. 1693). The

questions of what is the cherry juice of commerce, and how far the article in question is identical with that, have been discussed, and are here considered only in order to determine whether this importation was properly classified as "fruits preserved * * * in spirits," or whether a proper classification would place it under the similitude clause as more closely resembling cherry juice. It is conceded, and has been distinctly decided, that cherry juice described in the tariff act has an established commercial meaning. U. S. v. Rheinstrom, 13 C. C. A. 261, 65 Fed. 984, 31 U. S. App. 271.

It could not, therefore, be successfully insisted that the article in question is the cherry juice of commerce, as it is not the manufactured article which satisfies that description as known to commerce. Of course, if the contents of a cask are separated, and the fruit and fluid in which it is preserved are separately considered, there would be still less ground in support of the view that the fruit, or solids, was cherry juice, although it might be argued with force that the fluid separated from the fruit was cherry juice, or should be so classified under section 7. This, however, I think untenable, in view of its commercial meaning.

It is also admitted, or too evident to be denied, that the words "fruit preserved in spirits" had no technical or commercial meaning different from their popular and ordinary meaning at the time of the enactment of the tariff law of 1897. It is also obvious and is admitted that paragraph 263, Schedule G, § 1, c. 11, of the tariff act of July 24, 1897, 30 Stat. 171 (U. S. Comp. St. 1901, p. 1651), contains new legislation not found in the similar sections of previous tariff acts. It is, moreover, an established fact that the red cherry juice importations like the one in question commenced in 1891 or 1892, and that the proper classification of such fruit became a question between the importers and the government officials; and conceding, as argued by counsel for the government, that the precise question now presented was not considered in any of the disputes, nor in the decisions of the board of general appraisers in relation to the general subject, it still remains true that the disputes necessarily directed attention at once to the difficulty found in the proper classification of fruit like that in these new importations. There can be no doubt that the customs officials charged with the duty of enforcing the tariff act in relation to these importations were fully aware that the purpose of these importations was to manufacture the red cherry juice from the articles imported, and to thereby secure a more favorable rate of duty than had previously been obtained by importing the manufactured or expressed cherry juice itself. In this situation of affairs it is difficult to believe that Congress would have enacted the law of 1897, with the full consideration in detail which is given to such an act, without their attention being specially invited to this subject by the government officials, who had experienced difficulty in the matter, and who were fully aware of the trouble which had grown out of importations of this kind. It would hardly be just to assume otherwise than that Congress was fully advised of the facts relating to this specific article, when dealing with the tariff act, and, if so, the fact that no different or more specific reference was made to the article

becomes significant. In view of the situation, it would have been quite natural for Congress, in paragraph 299, after referring to the cherry juice, to have added the words, "or materials used for manufacturing cherry juice," or the like specific description applicable to this article. Or again, in paragraph 263, this article could have been distinguished for the purpose of classification by adding to the enumeration there given the words, "and other fruits of an edible character, or intended for table use," or such similar terms. It would, I think, be difficult to maintain logically that an article should be classified under the similitude clause as a nonenumerated article, when such an article had been previously imported, and was well known, and therefore subject to specific description and enumeration. If the origin of importations of this kind was subsequent in time to the enactment of the tariff law of 1897, there would exist much more satisfactory ground for classification under the similitude clause, for the reason that the article was not previously known, and therefore not subject to specific enumeration or classification at the time of the passage of the tariff act. Furthermore, it is conceded that cherry is a fruit as originally put up, and if it had remained in Germany for the purpose of being there manufactured, as was the custom, it would undoubtedly at any time previous to its manufacture into cherry juice have remained a "fruit preserved in spirits," according to the ordinary and popular meaning of the words. Again, if we imagine our tariff law as being in force as an internal revenue law in Germany, it would seem quite clear that the cherries in question, as originally put up in casks for the purpose of preservation until cherry juice could be manufactured therefrom, would remain classified as fruits preserved in spirits, according to the popular meaning, notwithstanding any changes which might take place in the casks. Nor do I think such a classification would become different by reason of any changes resulting from motion in transportation between any places in Germany, such, for example, as transportation from Magdeburg to Hamburg. It is true that the change brought about as a result of transportation is much greater when the goods are brought to this country, but the change is a difference in degree, and not in kind. The other fruits enumerated in paragraph 263 are of a character suitable for human food, and to be used as such, as must be admitted, and, this being so, counsel for the government contends, and with great force indeed, for the application of that principle of construction recognized as the rule of noscitur a sociis. The application of this principle was pressed in argument at bar, and is again urged in the brief, and the great force of the argument must be acknowledged. In view of the fact that the article in question fully satisfies the description in the statute, or, stated otherwise, that the descriptive terms in the statute undoubtedly fit the importation in question, when taken in their ordinary and popular meaning, with the further fact that there is no technical or trade meaning, it may, I think, be well doubted whether the fundamental principle embodied in this familiar maxim noscitur a sociis applies in its full force. I am disposed to think that the force of the argument based upon this rule is somewhat broken, in view of the remark already made that the article in question, and

125 F.—6

the method in which it had been imported, must have been known to Congress at the time of the tariff act, and that notwithstanding such knowledge the description in paragraph 263 was left so that, taken in its general and popular meaning, it would undoubtedly be applied to, and fit, the article or object in question. This, I think, must be true, notwithstanding that no reason should be given for associating the article under a general description in a class with other articles different in their use, but not in their name or method of preservation, as fruits preserved in spirits. In this connection, I think, too, the fact must be noted, as Judge Somerville says, that Congress imposed a duty of 25 cents more per proof gallon upon the excess of spirits used in the importation of preserved fruits than the duty upon imported brandy and spirits, intending thereby apparently to protect the government against frauds upon the revenue under color of importing fruits preserved in spirits. The fact that, in the tariff acts prior to 1897, Congress had found no occasion to deal with the fruits preserved in spirits or brandy on a per centum basis and with a limitation in that respect, must be treated as possessing some significance or influence in construing paragraph 263. It is true one case, In re Maron (1896), is cited as showing a previous controversy where the quantity of brandy and of cherries were about equal. But that case was clearly an attempt at fraudulent evasion of the customs laws, and should have been so treated. It will admit of question whether the fruits preserved in spirits or brandy, enumerated in paragraph 263, designed for human food or table use, and ordinarily put up for such purposes, would have brought about the new legislation in paragraph 263. If put up in casks or other large vessels, so as to furnish opportunity to import alcohol in that form, and thereby commit frauds upon the revenue, it would seem not difficult to deal with it as a fraud; for if the form and original identity of the fruit were so changed in transportation as the cherries in question, the article could no longer be practically used for human food or on the table, and no such claim could be made for it. Be this as it may, the fact is that the ordinary importations of fruit preserved for table use for many years had produced no legislation like the new provisions in paragraph 263, Schedule G, § 1, c. 11, Tariff Act July 24, 1897, 30 Stat. 171 (U. S. Comp. St. 1901, p. 1651), and we may infer that no such trouble had been experienced as to call for legislation like that in this paragraph, dealing not only with "fruits preserved * * * in spirits," but with such fruits when containing above 10 per cent. of alcohol, with a specific duty on the excess, leaving the remainder subject to the regular duty.

Somewhat broadly considered, I think it must be acknowledged that in the article in question we have the difference between the raw material and the manufactured product, between the materials and the article made therefrom in the process of manufacture. The article made is cherry juice, and the words "cherry juice" have a commercial meaning, and must be limited accordingly, while the words, "fruits preserved * * * in spirits," have no such restricted commercial meaning, and must be taken in their ordinary and comprehensive meaning. Arthur v. Morrison, 96 U. S. 108, 24 L. Ed. 764. Giving

to the words this popular comprehensive meaning, the article in question comes within the description, "fruits preserved in spirits," and must be classified accordingly.

Conceding that the question of proper classification is left doubtful, the result must be the same. In American Net & Twine Company v. Worthington, 141 U. S. 468, 12 Sup. Ct. 55, 35 L. Ed. 821, Mr. Justice Brown, giving the opinion of the court, said:

"We think that the intention that these goods should be classified as gilling twine is plain; but were the question one of doubt we should still feel obliged to resolve that doubt in favor of the importer, since the intention of Congress to impose a higher duty should be expressed in clear and unambiguous language."

It would seem that Congress is willing that this material may be imported for the purpose of making cherry juice, subject only to the provisions of paragraph 263. If not, there is and was at the date of the enactment no difficulty in making its intention clear by specific and apt words of description. There was no concealment, false representation, or other act showing fraud in the case. If the importer can import the fruit and manufacture the juice in this country, and thereby avoid a higher rate of duty, the right to do so cannot be denied when no other valid objection exists.

As I concur in the opinion of Judge Somerville in the more particular discussion of the case, I refer to that opinion as giving my reasons more in detail, and with this reference I do not deem it necessary to carry the discussion beyond the general statements made from my study of the case.

The result is that the ruling of the board of appraisers is affirmed.