### DARLINGTON, RUNK & CO. v. UNITED STATES.

(Circuit Court, E. D. Pennsylvania. March 7, 1905.)

No. 50.

1. CUSTOMS DUTIES—CLASSIFICATION—DRESS SHIELDS—WEARING APPAREL OF RUBBER.

   *Held*, that certain wearing apparel, consisting of dress shields, and composed in chief value of rubber, and in part of cotton, are dutiable as manufactures in chief value of india rubber, under paragraph 460, Tariff Act Oct. 1, 1890, c. 1244, § 1, Schedule N, 26 Stat. 602, and not under paragraph 349 of said act (section 1, Schedule I, 26 Stat. 592), relating to wearing apparel composed of cotton, or in chief value thereof, and to such wearing apparel "having india-rubber as a component material."

2. SAME—WEARING APPAREL.

   *Held*, that dress shields, which are articles for women's wear, intended to be worn under the arms to protect the dress from perspiration, are "wearing apparel," within the meaning of paragraph 413, Tariff Act Oct. 1, 1890, c. 1244, § 1, Schedule L, 26 Stat. 598.

On Application for Review of a Decision of the Board of United States General Appraisers.

The decision in question affirmed the assessment of duty by the collector of customs at the port of Philadelphia on merchandise imported by Darlington, Runk & Co.

Thomas S. Gates and Frank P. Prichard, for petitioners.

Wm. M. Stewart, Jr., and J. Whitaker Thompson, for the United States.

J. B. McPHERSON, District Judge. The merchandise involved in this controversy is dress shields—an article for women's wear, intended to be worn under the arms to protect the dress from perspiration. Some are made of cotton, and the rest are made of silk thinly lined with rubber. They were imported in October, 1891, and duties were imposed by the collector upon the cotton and rubber shields under paragraph 349 of the act of October 1, 1890, c. 1244, § 1, Schedule I, 26 Stat. 592, which reads as follows:

"Clothing ready made, and articles of wearing apparel of every description, handkerchiefs, and neckties or neck wear, composed of cotton or other vegeta-

ble fiber, or of which cotton or other vegetable fiber is the component material of chief value, made up or manufactured wholly or in part by the tailor, seamstress, or manufacturer, all of the foregoing not specially provided for in this act, fifty per centum ad valorem: provided, that all such clothing ready made and articles of wearing apparel having india rubber as a component material (not including gloves or elastic articles that are specially provided for in this act), shall be subject to a duty of fifty cents per pound, and in addition thereto fifty per centum ad valorem."

Duty was imposed upon the silk and rubber shields under paragraph 413, Schedule L, 26 Stat. 598:

"Laces and embroideries, handkerchiefs, neck ruffings and ruchings, clothing ready-made, and articles of wearing apparel of every description, including knit goods, made up or manufactured wholly or in part by the tailor, seamstress, or manufacturer, composed of silk, or of which silk is the component material of chief value, not specifically provided for in this act, sixty per centum ad valorem: provided, that all such clothing ready made and articles of wearing apparel when composed in part of india rubber (not including gloves or elastic articles that are specially provided for in this act), shall be subject to a duty of eight cents per ounce, and in addition thereto sixty per centum ad valorem."

The importer protested, claiming that the cotton and rubber shields should be classified either under paragraph 355 (Schedule I, 26 Stat. 593), which provides for a duty of 40 per cent. ad valorem upon "cotton damask in the piece or otherwise, and all manufactures of cotton not specially provided for in this act," or under paragraph 460 (Schedule N, 26 Stat. 602), which provides for a duty of 30 per cent. ad valorem upon "manufactures of * * * india rubber * * * or of which these substances or either of them is the component material of chief value, not specially provided for in this act." The silk and rubber shields, it was claimed, should be classified either under paragraph 414 (Schedule L, 26 Stat. 598) which fixes a duty of 50 per cent. ad valorem upon "all manufactures of silk, or of which silk is the component material of chief value, not specially provided for in this act," or under paragraph 460, as a manufacture of india rubber.

The board of general appraisers sustained the collector's classification upon the evidence afforded by the papers, no testimony having been taken. The material part of their decision is as follows:

"Directly and by implication, the pleadings admit that silk is the component material of chief value in the shields composed of silk and india rubber, and that cotton is the component material of chief value in the shields composed of cotton and india rubber. Hence the only question at issue is whether dress shields are wearing apparel? This question is considered fully in a former decision of this board—G. A. 557—to which decision we refer."

Upon the present proceeding for review several witnesses were examined, and their testimony establishes the fact to my satisfaction that india rubber is the material of chief value in the cotton and rubber shields, and that silk is the material of chief value in the silk and rubber shields. This being so, the ruling of the board upon the cotton and rubber shields must be reversed, upon the authority of Riley v. United States (C. C.) 66 Fed. 741, where it was

decided by Judge Cox that precisely similar shields should be classified under paragraph 460 as manufactures of india rubber, and not under paragraph 349.

The importers concede that silk has been proved to be the component material of chief value in the silk and rubber shields, and therefore the only question concerning them is whether they should be classified under paragraph 413, as an article of wearing apparel of which silk is the component material of chief value, or under paragraph 414, as manufactures of silk, or of which silk is the material of chief value, not specially provided for. If they are properly included in the class "articles of wearing apparel of every description," this language is more specific than "manufactures of silk, or of which silk is the component material of chief value," and the decision of the appraisers was right. In my opinion, they are properly included in such class, and the duty was correctly imposed under paragraph 413. They are complete and independent articles, manufactured for the express purpose of being worn upon the person as a part of the dress. They are not adapted to any other purpose, and they are in very general use as part of a woman's dress. Since "apparel" is not confined to outer clothing, but "is used in an inclusive sense, as embracing all articles which are ordinarily worn—dress in general" (Arnold v. United States, 147 U. S. 496, 13 Sup. Ct. 406, 37 L. Ed. 253), it seems to me to be clear that shields are embraced within the meaning of that word. The facts that shields are sold in the notion department of some large stores, and are described by some merchants as dressmakers' trimmings or findings, are not important. The testimony fell far below the standard of proof required to establish a commercial meaning for a word, and, in the absence of such proof, the ordinary meaning of the statutory language must prevail: Maillard v. Lawrence, 57 U. S. 261. 14 L. Ed. 925; Arthur v. Morrison, 96 U. S. 108, 24 L. Ed. 764. Indeed, under the ruling in Maillard v. Lawrence, it may be doubted whether a commercial meaning could be proved for words of such well-known import as "wearing apparel."

The decision of the board must therefore be affirmed as to the silk and rubber shields, but reversed as to the shields of rubber and cotton.