TYNG *v.* GRINNELL, COLLECTOR.

1. A special finding by the court upon issues of fact, where the parties or their attorneys have duly filed a stipulation, waiving a jury, has the same effect as a verdict, and is not subject to review by this court except as to the sufficiency of the facts found to support the judgment.
2. The question, whether an imported article is or is not known in commerce by the word or terms used in the act imposing the duty, is one of fact for the jury.

ERROR to the Circuit Court of the United States for the Southern District of New York.

*Mr. C. Donohue* for the plaintiff in error.

*Mr. Assistant Attorney-General Edwin B. Smith, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Import duties of two cents and a half per pound were, by the act of the 30th of June, 1864, levied on steam, gas, and water tubes and flues; and it appears that the second section of the act of 3d March, 1865, levied one cent per pound on wrought-iron tubes, *in addition to the* duties heretofore imposed by law.    13 Stat. 204, 493.

Certain wrought-iron articles of tubular form, intended to be so used as to allow the passage through the same of the products of combustion, were imported into the port of New York by the plaintiffs; and the record shows that the importers, on the 21st of January, 1870, made due entry of the importation, and that they claimed that the articles imported and described in the entry were flues, and that they were subject *only* to the import duty of two cents and a half per pound; and it appears that the defendant, as the collector of the port, decided that the articles described in the entry were wrought-iron tubes, and that they were dutiable as such at three cents and a half per pound, under the second section of the last-named act of Congress.

Pursuant to the decision of the collector, the duties on the importation were, on the 12th of February following, ascertained and liquidated by the proper officers of the customs; and it also appears that the plaintiffs, within ten days thereafter, gave notice in writing to the collector that they were dissatisfied with his decision fixing the rate of duty to which the articles imported were subject.   In the absence of any objection to the form of the notice, it may be assumed that it was correct.

Seasonable appeal was also taken by the plaintiffs to the Secretary of the Treasury; and the transcript shows that the secretary, on the 9th of April in the same year, affirmed the decision of the collector and the liquidation of the duties.

Apart from that, it also appears that the duties paid under protest amount to the sum of $173.36, and that the plaintiffs instituted the present suit in the Superior Court of the State to recover back the amount.   Service was made ; and, the defendant having appeared, the action was, on his motion, removed into the Circuit Court of the United States.   Both parties appeared in the Circuit Court, and, having waived a jury, proceeded to trial before the circuit judge, without a jury. Judgment was rendered for the defendant, and the circuit judge made a special finding of facts.   Certain exceptions were filed by the plaintiffs, and they sued out the present writ of error.

Two errors were assigned by the plaintiffs, as follows : (1.) That the court below erred in finding and deciding that the articles described in the entry were wrought-iron tubes, within the meaning of the amendatory tariff act, and that they were subject to the duty imposed of three and a half cents per pound.   (2.) That the court below erred in refusing to find and decide that the articles imported were wrought-iron flues as claimed by the plaintiffs, and that they were only subject to a duty of two cents and a half per pound.

Whether the articles are wrought-iron tubes, as insisted by the United States, or are wrought-iron flues, as contended by the plaintiffs, was certainly a question of fact dependent upon the evidence; and, if· so, it must be that it was a question to be decided by the court, inasmuch as the parties had waived a jury.   Issues of fact pending in the circuit courts may be tried and determined by the court, without the intervention of a

jury, whenever the parties or their attorneys file a stipulation in writing with the clerk of the court waiving a jury. Such a submission necessarily implies that the facts shall be found by the court; and the act of Congress provides that the finding may be general or special, and that it shall have the same effect as the verdict of a jury in a case where no such waiver is made.

Exceptions may be taken to the rulings of the court *made in the progress of the trial*, and, if duly taken at the time, the rulings may be reviewed here, provided the questions are properly presented by a bill of exceptions. Where a jury is waived, and the issues of fact are submitted to the court, the finding of the court may be either general or special, as in cases where the issues of fact are tried by a jury; but, where the finding is general, the parties are concluded by the determination of the court, subject to the right to bring error to review any rulings of the court to which due exception was taken during the trial.

Whether the finding is general or special, the rulings of the court during the progress of the trial, if duly excepted to at the time and presented by a bill of exceptions, may be reviewed in this court; and, in a case where the finding is special, the review, even without a bill of exceptions, may extend to the question, whether the facts found are sufficient to support the judgment. *Miller* v. *Ins. Co.*, 12 Wall. 295.

Tested by the preceding rules of decision, which are undeniably correct, it is clear that there are but two questions open to review in the case before the court: *first*, whether the court ruled correctly in admitting evidence as to the name by which the article in question had been imported and sold in this country; *second*, whether the facts found by the court are sufficient to support the judgment.

1. Expert witnesses were examined on both sides, and the defendant inquired of a manufacturer and an experienced iron merchant as follows: "By what name has this article been imported, and sold in this country?" to which the plaintiffs objected. But the court overruled the objection, and the witness answered: "It has always been imported and sold as an iron boiler-tube by every importer in the country;" and the transcript shows that the exception of the plaintiffs was duly noted at the time.

Authorities which support the ruling of the court are very numerous, and quite as decisive as they are numerous. Tariff laws are passed to raise revenue; and, for that purpose, substances are classed according to the general usage and known denominations of trade. Whether a particular article is designated by one name or another in the country of its origin, or whether it is a simple or mixed substance, is a matter of very little importance in the adjustment of our revenue laws, as those who frame such laws are chiefly governed by the appellations which the articles bear in our own markets and in our domestic and foreign trade. *United States* v. *Smith*, 9 Wheat. 438.

Laws regulating the payment of duties are for practical application to commercial operations, and are to be understood in a commercial sense; and this court, sixty years ago, decided that Congress intended that they should be so administered and understood. *United States* v. *Goodale*, 8 Pet. 279. Such laws, say this court, are intended for practical use and application by men engaged in commerce; and hence it has become a settled rule, in the interpretation of statutes of the description, to construe the language adopted by the legislature, and particularly in the denomination of articles, according to the commercial understanding of the terms used. *Elliott* v. *Swartwout*, 10 Pet. 151.

Congress must be understood, says Taney, C. J., as describing the article upon which the duty is imposed, according to the commercial understanding of the terms used in the law, in our own markets; and the court held in that case that Congress, in imposing the duty, must be considered as describing the article according to the commercial understanding of the terms used in the act of Congress when the law was passed imposing the duty. *Curtis* v. *Martin*, 3 How. 109.

Suffice it to say, without multiplying authorities, that the rule of law is settled, that the question, whether an imported article is or is not known in commerce by the word or terms used in the act imposing the duty, is a question of fact for the jury, and not a question of construction; and of course it must, in a case like the present, be determined by the court as a question of fact, the issues of fact, as well as of law, being submitted to the court. *Lawrence* v. *Allen*, 7 How. 797.

Special findings under such a submission are no more subject to review here than general findings, as the provision in respect to both is that the finding of the court shall have the same effect as the verdict of a jury. Appellate courts have no more power to review the verdict of a jury where it is special than if it be general; but they may inquire and determine whether the special verdict is the proper basis of a judgment; and the act of Congress provides that the review, if the finding is special, may extend to the determination of the sufficiency of the facts found to support the judgment.

Matters of fact in such cases are not reviewable here under any circumstances, as appears by all the cases decided by this court, since the act was passed allowing parties to waive a jury, and to submit the law and fact to the determination of the Circuit Court. Consequently, it is irregular to report the evidence in the transcript, except so far as it may be necessary to explain the legal questions reserved, as to the rulings of the court in the progress of the trial; nor is either party entitled to a bill of exceptions as to any special finding of the court, for the plain reason that the special findings of the Circuit Court in such a case are not the proper subject of exceptions nor of review in this court.

2. Suppose that is so: then it follows that nothing remains to be considered in the case except the question, whether the facts are sufficient to support the judgment.

Facts found by the Circuit Court not being reviewable here, it will be sufficient to refer to a few brief sentences in the findings of the court, exhibited in the transcript, as follows: That the goods imported were, at the time of the passage of the tariff act, " known in commerce, and to dealers therein, as and by the name of wrought-iron tubes," and that the same were, and had been, at all times, imported by that name; and that " the same continued to be so known, designated, imported, and dealt in, to and including the time " of the enactment of the amendatory tariff act, and a long time thereafter. . . . " That wrought-iron tubes are constructed for various purposes, and are sometimes welded by joining the edges of the sheet-iron curved for that purpose, and sometimes by lapping the edges and welding them thus lapped."

Tubes joined in the former mode are called "but-welded wrought-iron tubes." When joined in the latter mode, "they are called lap-welded wrought-iron tubes;" and it appears that for uses as flues lap-welded tubes are *alone* suitable, and are understood to be "intended whenever wrought-iron tubes are designated as wrought-iron flues;" that wrought-iron flues is a subordinate designation used to indicate the purpose for which the tubes are to be employed, when ordered for such specific purpose; but that "they are included in the general designation of wrought-iron tubes," by which name *alone*, whether but-welded or lap-welded, they were known until after the passage of the amendatory tariff act.

Tubes lap-welded, it seems, when wanted for the described special purpose, are sometimes designated as flues; but the court finds that "the goods imported were wrought-iron tubes, within the true intent and meaning of the tariff act" in operation at the time of their importation; that the goods were properly classified and designated as such by the collector; and that they were subject to the duty of three cents and a half per pound, as adjudged by the proper officers of the customs.

Exceptions were filed by the plaintiffs to the finding, upon the ground that it is not warranted by the evidence; but sufficient has already been remarked to show that the findings of the Circuit Court, under such a submission, are not the subject of exceptions nor of review in this court, when the cause is removed here by a writ of error.

Findings of the kind required may be general or special; but, if special, the finding must not be a mere report of the evidence, leaving the conclusions of fact to be adjudged by the appellate tribunal, as that course is forbidden by the repeated decisions of this court. Instead of that, the requirement is that the Circuit Court shall state the ultimate facts, or the propositions of fact, which the evidence establishes, and not the evidence from which those ultimate facts, or propositions of fact, are derived. Such findings are intended by Congress as a proper substitute for the special verdict of a jury; and it is settled law, that it is of the very essence of a special verdict that the jury shall find the facts on which the court is to pronounce the judgment, according to law; that, in order to enable

the Appellate Court to act upon a special verdict, the jury must find the facts, and not merely state the evidence of facts; and the rule is, that when the jury states the evidence merely, without stating the conclusions of the jury, a court of error cannot act upon matters so found. *Norris* v. *Jackson*, 9 Wall. 127; *Suydam* v. *Williamson*, 20 How. 432.

Apply these principles to the case, and it is clear that the findings are sufficient and conclusive, and that there is nothing in the bill of exceptions or the reported evidence which can benefit the plaintiffs.                          *Judgment affirmed.*