## HEDDEN v. RICHARD.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF NEW YORK.

No. 208. Submitted April 24, 1893.—Decided May 10, 1893.

The language of commerce, when used in laws imposing duties on importations of goods, and particularly when employed in the denomination of articles, must be construed according to the commercial understanding of the terms employed.

This rule is equally applicable where a term is confined in its meaning not merely to commerce but to a particular trade, and in such case, also, the presumption is that the term was used in its trade signification.

In an action against a collector to recover an excess of duties paid under protest, the defendant is entitled to show that words employed in a tariff act have a special commercial meaning in the trade, and to have it submitted to the jury whether the imported goods in question came within them.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Maury* for plaintiff in error.

*Mr. Edwin B. Smith* for defendants in error.

MR. JUSTICE SHIRAS delivered the opinion of the court.

At various times in the year 1886 the defendants in error imported into the port of New York certain articles of furniture, for the account of Jacob and Josef Kohn, of Vienna, Austria, the manufacturers and consignors thereof, which the collector of the port classified as " furniture finished," under the provision for " cabinet ware and house furniture, finished," contained in Schedule D of the tariff act of March 3, 1883, and upon which he laid and collected duty at the rate of 35 per cent ad valorem. Against this classification and exaction the importers duly protested, claiming that the furniture was in piece and not finished, and therefore dutiable at 30 per cent

ad valorem, under the provision for " house or cabinet furni-- ture, in piece, or rough, and unfinished," and on March 23, 1887, they brought an action in the Superior Court of the city of New York, which was duly remanded by *certiorari* into the Circuit Court of the United States for the Southern District of New York, against Edward L. Hedden, the collector, alleging that they had been compelled to pay him a certain amount in excess of the lawful duty on the goods, and demanded judgment for the amount of such excess, with interest. The defendant answered, asserting that the duty collected by him as aforesaid was assessed at the lawful rate, and the issue thus joined came for trial in the said court on May 14, 1886, before the court and a jury.

On the trial the plaintiffs in the action introduced testimony tending to show that the furniture in question consisted of Vienna bent wood chairs, settees, etc., which were imported into this country in separate parts or pieces, but varnished or polished, and requiring nothing but to be screwed together, (the holes for screws or bolts being already prepared,) and to have the ends of the screws or bolts "touched up" with paint or varnish, to form articles of furniture fit for use. The bolts or screws used came over with the furniture, and all the parts of the articles, as received by the importer, were ready to be put together. A sample chair, in the condition in which it was received by the importers, was brought into court by the plaintiffs, and the manner of putting the parts together was explained to the jury. The plaintiffs also introduced the testimony of a liquidator of duties at the custom-house of New York, to the effect that the difference between the amount of duties exacted from the plaintiffs and the sum which would have been collectible from them if the furniture had been assessed at 30 per cent ad valorem amounted, with interest, to $443.34.

The testimony on behalf of the defendant tended to show that the articles of furniture described were first put together at the factory in completed form, then varnished or polished, and then taken apart and packed for shipment. The term " finished," as applied to furniture, had, in the furniture trade,

on and prior to March 3, 1883, a particular trade meaning, namely, that an article had been varnished, stained, oiled, polished, or the like. The chair exhibited by the plaintiffs had been "finished," and was what was known to the trade as a "finished knocked down" chair. The terms "in piece" and "rough" had no special meaning in the trade, different from their general meaning, though the trade used the expression "in the rough" in the sense of "unfinished."

Upon the conclusion of the testimony the defendant's counsel moved the court (1) to direct the jury to find a verdict for the defendant on the ground that the uncontradicted evidence in the case and the exhibit showed that the furniture imported was "furniture finished," within the meaning of the statute; (2) that the jury be directed to find a verdict for the defendant on the ground that the plaintiffs had not proven facts sufficient to enable them to recover; and (3) to allow the case to go to the jury on the question of whether the furniture imported was "furniture finished," or "furniture in piece, or rough, and not finished," within the meaning of the statute. These motions having been successively made and denied, and exceptions to the denials duly taken, the court, on motion of the plaintiff's counsel, directed the jury to render a verdict in favor of the plaintiffs for the sum of $443.34. The jury then found a verdict for the plaintiffs in the said amount, and judgment was entered October 7, 1889, in accordance therewith. The defendant thereupon sued out a writ of error.

The subject of contention presented by this record is simply as to the proper construction of the statute. The collector put in testimony to show that in the furniture trade the word "finished" had a particular trade meaning, and the court below refused to permit the application of such meaning, if it should be found to exist, to the word as used in the act. The question is, therefore, whether, if a term used in a tariff law has a general meaning, as understood by society at large, and also a special trade signification, it is to be presumed that Congress used the word in its general sense, or in its trade sense.

With regard to the language of commerce, the general rule

laid down by this court is that it must be construed, when used in laws imposing duties on importations of goods, and particularly when employed in the denomination of articles, according to the commercial understanding of the terms used. *United States* v. *One Hundred and Twelve Casks of Sugar*, 8 Pet. 277 ; *Elliott* v. *Swartwout*, 10 Pet. 137. While it is true that " language will be presumed to have the same meaning in commerce that it has in ordinary use, unless the contrary is shown," *Swan* v. *Arthur*, 103 U. S. 597, 598, yet " the commercial designation of an article among traders and importers, where such designation is clearly established, fixes its character for the purpose of the tariff laws; . . . a specific designation *eo nomine* must prevail over general terms, and a commercial designation is the standard by which the dutiable character of the article is fixed." *Arthur* v. *Lahey*, 96 U. S. 112, 113, 114. This rule is equally applicable where a term is confined in its meaning, not merely to commerce, but to a particular trade, and in such case also the presumption is that the term was used in its trade signification.

While a customs law taxing an article which every one in the community might be expected to import, such as " wearing apparel," may use words which every one understands, and which, unless taken in the ordinary sense, would mislead the whole community, and cannot, therefore, be supposed to be intended in any other sense, unless there is something to indicate such intention, yet, on the other hand, a tariff law may use language not intended for the community at large, but for merchants, or for a particular trade, and such as to mislead those for whom it is intended, if not taken in the commercial or trade sense; and such language is that under consideration, speaking of a manufactured article in various stages of its construction. In such a case, as in the other case, the words are to be taken in the sense in which they will be naturally understood by those to whom they are addressed.

We are of opinion that as the collector offered to prove that the word in question had, at and prior to the passage of the act of 1883, a particular trade meaning, the court should have considered the trade meaning, if established, as applicable to

the matter at issue, and should have submitted the case to the jury, with instructions to render a verdict for the importers if they found that the furniture was not "finished" within the trade meaning of the term, and for the collector if they found the contrary.

*The judgment of the court below is reversed, and the case remanded, with directions to award a new trial, and proceed in conformity with this opinion.*