## GOAT AND SHEEPSKIN IMPORT COMPANY *v.* UNITED STATES.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 261. Submitted April 17, 1907.—Decided May 13, 1907.

The commercial designation of an article, which designation was known at the time of the passage of a tariff act, is the name by which the article should be classified for the payment of duty without regard to the scientific designation and material of which it may be made or the use to which it may be put.

The word "wool" in paragraph 360 of the tariff act of July 24, 1897, 30 Stat. 151, 183, does not include a substance which, while the growth upon a sheepskin is, nevertheless, commercially known, designated, and dealt in, as Mocha hair, having none of the characteristics of wool, and which would not be accepted by dealers therein as a good delivery of wool.

THIS case comes here by virtue of a writ of certiorari issued from this court to the United States Circuit Court of Appeals for the Second Circuit, for the purpose of reviewing the action of the courts and of the customs authorities in relation to an assessment of duty on certain importations made by the petitioner, appellant, at the port of New York.

The merchandise on which duty was assessed was a growth upon certain skins of the Mocha sheep, imported from Hodeida, Arabia, which growth was classified by the collector as wool on the skin of the third class and assessed for duty at three cents per pound, under the provisions of paragraph 360 of the tariff act of July 24, 1897 (30 Stat., pages 151, 183). The importer duly protested against the classification and insisted that the merchandise was entitled to entry free of duty under paragraph 571, 30 Stat., *supra*, page 198, or under paragraph 664 of such act. (Page 201.) Paragraphs 351, 358, 360, under which the Government claims duty, and paragraphs 571 and 664, under which the importer claims free entry, are set forth in the margin.[1]

---

[1](Paragraphs from Tariff Act of 1897, under which the Government claims. 30 Stat. 151, 183.)

351. Class three, that is to say, Donskoi, native South American, Cordova, Valparaiso, native Smyrna, Russian camels' hair and all such wools of like character as have been heretofore usually imported into the United States from Turkey, Greece, Syria and elsewhere, excepting improved wools hereinafter provided for.

358. On wools of the third class and on camels' hair of the third class, the value whereof shall be twelve cents or less per pound, the duty shall be four cents per pound.

360. The duty on wools on the skin shall be one cent less per pound than is imposed in this schedule on other wools of the same class and condition, the quantity and value to be ascertained under such rules as the Secretary of the Treasury may prescribe.

Petitioner claims under following paragraphs:

571. Hair of horse, cattle and other animals, cleaned or uncleaned, drawn

The collector having returned the merchandise in question as wool of the third class, under paragraph 360, the importer appealed to the Board of General Appraisers, where the ruling of the collector was sustained, and the importer then appealed to the Circuit Court and then to the Circuit Court of Appeals, each of which courts sustained the ruling of the Board of General Appraisers and the collector.

Before the Board of General Appraisers the importer produced six witnesses, who testified as to the character, use and commercial designation of the merchandise. On the appeal to the Circuit Court a referee was there appointed, and the importer offered further evidence to sustain his claim that the merchandise was entitled to free entry.

No testimony was offered by the Government. It is not claimed by the Government that the merchandise in question comes under paragraph 351 as wool of the third class (except as it may be wool of like character), as it is not Donskoi, native South American, Cordova, Valparaiso, native Smyrna or Russian camel's hair, but it is asserted that the growth on the skins was wool on the skin under paragraph 360, or was a wool of like character as that above enumerated in paragraph 351.

The evidence shows that the hair or wool (whichever it is called), grows on the Mocha white sheep, imported from Hodeida, Arabia. The growth to be found on this breed of sheep is not bought or sold in this country as wool, but as hair. It would not be accepted as a delivery of wool of any grade by those dealing in that article. Although there might have been a very small proportion of what might possibly be termed very inferior wool on these skins (not more than ten per centum in any case, and frequently less), yet there was no substantial use of any portion of the growth on the skins for purposes for

_____

or undrawn, but unmanufactured, not specially provided for in this act, and human hair, raw, uncleaned and not drawn.

664. Skins of all kinds, raw (except sheepskins with the wool on), and hides not specially provided for in this act.

which wool is generally used. To some extent, but very little, it had been tried in mills to spin, and it might be used sometimes by carpet manufacturers in a small way, and efforts had been made to use it, mixed with wool, in spinning, but it was not practically successful, nor was it practicable to use it for other purposes for which wool is used. The chief, or predominant, and almost sole use of the substance is as hair for stuffing, and for the saddlery trade, and by bed manufacturers for stuffing purposes. It is bought and sold all over the country as Mocha hair. The skin upon which the substance grows is the thing that is valuable. A large part of the skins imported into this country is used in the manufacture of glove leather. One witness testified that his firm so used from seventy-five to ninety per cent. of the skins imported, and the growth thereon was bought and sold as Mocha hair. It costs more to remove the growth from the skin than it sells for after its removal. It cannot be used for spinning purposes, because it would not hold together. It might be carded, but there would not be much left after carding. The price of the skins on which this growth is found is not influenced by the quantity of the growth on them. The more of a growth there is, the less the skin will bring, or, as is said, the more hair, the poorer the skin. The skins are sold by the importers to tanners of gloves and shoe leather, just as they arrive. After the growth is washed and removed from the skin it may be sold for from three to five cents per pound, which is less than the cost of removing it. In buying the skins no notice is taken of the growth, the only consideration being the value of the pelt, and the pelts are worth no more with long hair on than short hair. The growth has never been accepted or sold as wool, but, on the contrary, prior to July 24, 1897, when the tariff act was passed, it was uniformly regarded and bought and sold in the United States as hair. "Mocha hair" was the trade nomenclature prior to 1899, and as such the trade name was definite and uniform throughout the United States, and dealers in it never knew it to be called anything else than Mocha hair. It has not the appearance of

wool, does not feel like wool and has none of the qualities of wool. It is bought from tanners after it has been taken from the skin by them, and it is thus sold and bought as Mocha hair, and the skins are used for leather by the tanners.

One of the witnesses called on behalf of the importers was an examiner of wool fibres and skins at the port of New York, which position he had held for about fifteen years. He said that when he first went into the government employ such skins as those in question were returned free, the hair as well as the skin, but that practice has since been changed. The witness further said, that if the growth in question were found on a goat he would return it as hair of a goat, and entitled to free entry; that wool could be run down, or deteriorate, to such a condition as the growth in question, but that it was, in fact, mostly "what they call dead hair or kemp;" that although it could possibly be carded, it was not commercially suitable, and there would not be much left after they got through carding it. On cross-examination the witness said that he would return the article in question as Mocha sheepskin with the wool on. On such a skin as the one in question the witness said there was a substance which he would call wool, which was about ten per cent. only of the growth; that he examines such skins as the ones in question and throws out those he considers dutiable when there is enough wool to call it dutiable, and lets the skins go not dutiable when you could not make anything out of the growth in any way, although some use might possibly be made of it.

The cross-examination of other witnesses was to the effect that this growth had been tried in mills for the purpose of spinning, but very little, being used with other stock to make into yarn, but it has not been successfully used for that purpose; it might be used sometimes by carpet manufacturers in a small way, and while it could not be used or spun alone, it might be carded. It was also said on cross-examination of one of the witnesses that if such growth ran pretty white it is sometimes used in those low grade carpet yarns where they put in such stuff as jute packing is made of and some hair like the growth

in question. The evidence is, however, overwhelming and the witnesses substantially unanimous that this substance is not known as wool, and is neither bought nor sold as such, and is commercially known as Mocha hair and is not used as wool.

*Mr. J. Stuart Tompkins,* with whom *Mr. Edward S. Hatch* was on the brief, for petitioner:

The growth of the skins must be classified according to its commercial designation. *Hedden* v. *Richards,* 149 U. S. 346, 348, 349; *American Net and Twine Co.* v. *Worthington,* 141 U. S. 468, 471; *Arthur* v. *Morrison,* 96 U. S. 108; *Two Hundred Chests of Tea,* 9 Wheat. 430, 438; *In re Wise,* 73 Fed. Rep. 183, 188, and cases cited.

The evidence in this case is wholly uncontroverted that the substance of these Mocha whitehead sheepskins, according to the general and uniform trade understanding, is not wool, but, on the contrary, is hair, and it follows that the collector's classification of the substance as wool of Class 3 was erroneous.

The article has always been generally and uniformly bought and sold only under the name of "Mocha hair," and is so known and recognized not only in commerce, but also according to common understanding; it is used for purposes other than those to which wool is applied—and this Mocha hair would not be accepted as a good delivery under an order for even low-grade wool.

Under this general and uniform commercial understanding and usage, excluding this article from the category of merchandise regarded in trade as "wool," and including it in that known as "hair," it was improperly classified by the collector under paragraph 358 of the tariff law of 1897, as "wool." *Chew Hing Lung* v. *Wise,* 176 U. S. 156, 161; *Arthur* v. *Morrison,* 96 U. S. 108, 110; *Elliott* v. *Swartout,* 10 Peters, 137, 151; *Hedden* v. *Richard,* 149 U. S. 346, 349.

It is not material that it is physically possible to use the article for some of the purposes for which wool is used, or that it occasionally may be used for such purpose. An occasional

or possible use is not sufficient to affect the classification of an article for tariff purposes. *Chew Hing Lung* v. *Wise,* 176 U. S. 156, 162; *Magone* v. *Wiederer,* 159 U. S. 555; *Hartranft* v. *Langfeld,* 125 U. S. 128.

The evidence establishes the fact that the growth on the skins is hair, and not wool. The substance is commercially known as hair and dealt in under that designation, and never as wool.

The commercial designation is in accordance with the actual character of the article, because it has none of the characteristics of wool and it is not used as wool and is not suitable for the uses to which wool is put.

*Mr. Assistant Attorney General Sanford* for respondent:

Under the wool paragraphs of the tariff act the word "wool" is manifestly used in a generic sense to describe the fleece of the sheep, as distinguished from the word "hair," which is used to describe the coat of the camel and other like animals, and not in a technical and commercial sense as referring only to that portion of the fleece of the sheep which possesses the specific qualities of wool as distinguished from those of hair.

The rule of commercial designation is not applicable to the classification of wool.

Where it appears from the statute itself that words in a tariff act are not used in a technical sense as a commercial designation or trade term, their meaning is not to be controlled by their commercial usage. *Maillard* v. *Lawrence,* 16 How. 250; *Greenleaf* v. *Goodrich,* 101 U. S. 278; *Barber* v. *Schell,* 107 U. S. 617; *Newman* v. *Arthur,* 109 U. S. 132; *Reimer* v. *Schell,* 4 Blatchf. 328; *Roosevelt* v. *Maxwell,* 3 Blatchf. 391; *Carson* v. *Nixon,* 90 Fed. Rep. 409; *Patton* v. *United States,* 159 U. S. 500; *Cadwalader* v. *Zeh,* 151 U. S. 171; *United States* v. *Klumpp,* 169 U. S. 209.

General words of similitude, such as "goods of a similar description," are not words of commercial designation whose meaning can be controlled by proof that goods which are in fact

of similar description have a different commercial classification.

The proof of commercial designation in the present case is in any event insufficient, for the reason that where an importer claims that certain specific articles are excluded by their commercial designation from a class mentioned in a tariff act, it is not sufficient for such purpose, even in those cases where the test of commercial designation is applicable, to show negatively that these specific articles were commercially known by another name and were not commercially known by the name used in the act, but it must be affirmatively proven that the words used in the act had at the time of its passage a definite and uniform meaning which excluded the specific articles in question. In other words, the proof of commercial meaning must not be addressed simply to the commercial designation of the particular article in question, as was done in the case at bar, but to the commercial meaning of the term used in the act. *Greenleaf* v. *Goodrich*, 101 U. S. 278; *Schmieder* v. *Barney*, 113 U. S. 645; *Claflin* v. *Robertson*, 38 Fed. Rep. 92; *Carson* v. *Nixon*, 90 Fed. Rep. 409 (C. C. A.); *Field* v. *United States*, 90 Fed. Rep. 412 (C. C. A.).

The testimony offered by the importer in reference to the general character of these fleeces and their commercial use is insufficient to overthrow the presumption in favor of a correct classification.

As the test of classification under the statute is likeness of character to Donskoi and other enumerated wools of the third class, to be determined by the standard samples of wool of the third class deposited in the custom house, the importer's testimony as to the qualities of this fleece and its commercial use, which is entirely of an abstract and general character and not directed either to the point of its likeness to Donskoi and other enumerated wools or of conformity to the standard samples, is in any event immaterial.

It is well settled that where a wool or hair is of a species coming within a particular class of the wool schedule its es-

pecial quality and commercial use is immaterial and will not take it out of such class. *Cooper* v. *Dobson,* 157 U. S. 148.

There was, furthermore, material evidence tending to show that the fleece in question in fact has the qualities and is adapted to the uses of a low-grade third-class wool, and hence, under the settled rule of practice, the concurrent finding of the Board of General Appraisers, the Circuit Court, and the Circuit Court of Appeals that it is a wool of this class, is now conclusive.

In the Circuit Court of Appeals the judgment below was affirmed on the opinion of the Circuit Court.

The case therefore calls for the application of "the settled doctrine of this court . . . that the concurring decision of two courts on a question of fact will be followed unless shown to be clearly erroneous." *Dravo* v. *Fabel,* 132 U. S. 487; *Compania La Flecha* v. *Brauer,* 168 U. S. 104; *Stuart* v. *Hayden,* 169 U. S. 1; *Baker* v. *Cummings,* 169 U. S. 189, 198; *Wupperman* v. *The Carib Prince,* 170 U. S. 655; *Workman* v. *New York City,* 179 U. S. 552, 555; *Brainerd* v. *Buck,* 184 U. S. 99; *Beyer* v. *Le Fevre,* 186 U. S. 114; *Shappirio* v. *Goldberg,* 192 U. S. 232.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

The evidence in this case, taken before the board of appraisers and also before the Circuit Court, is uncontradicted. It shows that the substance in question is not wool, has none of its characteristics and is not put to any of its uses and does not appear like wool. On the contrary, it is composed mostly of dead hair or kemp and cannot be remuneratively carded, nor is it commercially suited for carding, nor for spinning. Its commercial designation is Mocha hair, and it is not known or regarded or recognized as wool in any of the markets of the country.

It is not denied that the commercial designation of an article, which designation was known at the time of the passage of a tariff act, is the name by which the article should be classified

for the payment of duty, and, as is stated, "without regard to their scientific designation and material of which they may be made or the use to which they may be applied." *Two Hundred Chests of Tea,* 9 Wheat. 430, 438; *Arthur v. Morrison,* 96 U. S. 108; *American Net and Twine Co. v. Worthington,* 141 U. S. 468; *Hedden v. Richard,* 149 U. S. 346, 348. As was said by Mr. Justice Story in *Two Hundred Chests of Tea, supra,* Congress did not "suppose our merchants to be naturalists or geologists or botanists. It applied its attention to the description of articles as they derived their appellations in our own markets, in our domestic as well as our foreign traffic." And in *Hedden v. Richard, supra,* it was said: "The language of commerce . . . must be construed, . . . particularly when employed in the denomination of articles, according to the commercial understanding of the terms used." The commercial designation should prevail, unless Congress has clearly manifested a contrary intention. *Cadwalader v. Zeh,* 151 U. S. 171, 176.

We are of opinion that the use of the word "wool" in the tariff act, excluded a substance which, while it was a growth upon a sheepskin, was nevertheless, commercially known, designated and dealt in as Mocha hair, having none of the characteristics of wool, and which would not be accepted by dealers therein as a good delivery of wool.

In this case the evidence is uncontradicted that the growth on these skins was commercially known as Mocha hair, and that it was not used in the way wool is used, or as a substitute for wool. It ought not, simply for the reason that the skin upon which it grows is the skin of a sheep, to be classified as wool, under paragraph 360 of the tariff act, and thereby be subjected to a duty as high as the value of the substance itself.

Although it has been so classified, and that classification has been affirmed all through, yet the question is not presented to this court as if it were a question of fact decided upon contradictory evidence, and concluding this court for that reason. There is, in truth, no contradictory evidence in the case. It is one, where in our opinion, the courts below have given undue

weight to the evidence elicited on cross-examination of witnesses called on the part of the importer, which showed that there possibly was, in some cases, a very little inferior wool found on these skins, while the courts ignored the other facts, as testified to by the same witnesses and already mentioned, which showed beyond the possibility of successful contradiction that the substance was erroneously classified as wool.

Upon the facts, the substance ought not to have been so classified. The growth being still on the skin should have been regarded as part of such skin, and classified under paragraph 664, in the free list, and not as a sheepskin with the wool on.

We do not agree that the word "wool" in this act is used in a generic sense so far as this particular point is concerned. The word does not necessarily include all growth upon the coat of a sheep, even though the substance is like that in question here.

Counsel for the Government cites from the Encyclopædia Britannica, where, in speaking of the difficulty in determining the dividing line between hair and wool, it is said: "At what point indeed it can be said that an animal fiber ceases to be hair and becomes wool it is impossible to determine, because in every characteristic the one class by imperceptible gradations merges into the other, so that a continuous chain can be formed from the finest and softest merino to the rigid bristles of the wild boar."

It may be difficult in some cases to define the line between "wool" and "hair" as a growth upon skins, but we do not regard that difficulty as an argument for the construction contended for by counsel for the Government. That argument leads to the classification of a substance like that in question, as wool, when in fact it bears no resemblance to it, is not used as wool, and has none of its characteristics, and is known commercially as Mocha hair and is so bought and sold over the whole country. The case is one of degree, and because in some few cases the points may closely approach each other and there may be in such cases some difficulty in telling wool from hair,

yet that fact furnishes no reason for refusing to adopt the general test which in most cases is easily applied, fitness, identity of use, commercial designation. To adopt the claim of counsel eliminates all inquiry as to whether an article is wool or hair, and leaves simply the question whether it is to be found on what may be called the wool bearing animals or on the alpaca or other like hair coated animals. Some sheep are wool bearing animals, therefore the hair on the skin of the Mocha sheep is wool and must be classified as such. We do not agree with this claim. If an article does not, to a dealer, look like wool, cannot be used as wool, is not commercially known as wool, but, on the contrary, is bought and sold throughout the country as Mocha hair and is so designated commercially by those dealing in it, it ought not to be classified as wool or made to pay duty as such, simply because it grows on a sheep.

We have looked over the various authorities cited by counsel for the Government, but we see nothing in any of them tending to the conclusion that upon the facts in this case the growth on the skin of the Mocha sheep was properly classified as wool.

Taking all the evidence in this case, uncontradicted as it is, we feel compelled to the conclusion that the classification in this case, adopted by the courts below and by the appraisers and collector was wrong, and that the merchandise in question was entitled to free entry.

The judgments of the courts below are reversed and the case remanded to the Circuit Court with instructions to take such further proceedings as may be necessary, not inconsistent with this opinion.

*Reversed.*

MR. JUSTICE MOODY took no part in the decision of this case.