### LAWRENCE JOHNSON & CO. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. November 16, 1908.)

#### No. 21 (4,615).

1. CUSTOMS DUTIES (§ 34*)—CLASSIFICATION—CABRETTA HAIR—"WOOL."

The growth on cabretta skins is "wool," within the meaning of Tariff Act July 24, 1897, c. 11, § 1, Schedule K, 30 Stat. 182 (U. S. Comp. St. 1901, p. 1664).

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 34.*

For other definitions, see Words and Phrases, vol. 8, p. 7515.]

2. CUSTOMS DUTIES (§ 52*)—COMMERCIAL DESIGNATION—PERIOD OF ESTABLISHMENT.

Evidence as to a commercial term used in a tariff act must be given as of the time of the passage of the act.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 52.*]

Appeal from the Circuit Court of the United States for the Southern District of New York.

For decision below, see 159 Fed. 189, affirming a decision by the Board of United States General Appraisers, which had affirmed the assessment of duty by the collector of customs at the port of New York. The importations in controversy consisted of cabretta skins. The growth on these skins was classified as "wool," and assessed with the duty provided for wool on the skin, under Tariff Act July 24, 1897, c. 11, § 1, Schedule K, 30 Stat. 182 (U. S. Comp. St. 1901, p. 1664). The importers contended for classification under section 2, Free List, par. 664, 30 Stat. 201 (U. S. Comp. St. 1901, p. 1688), relating to "skins of all kinds, raw (except sheepskins with the wool on)."

Walden & Webster (Henry J. Webster of counsel), for importers.

D. Frank Lloyd, Asst. U. S. Atty.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge.—In Lawrence Johnson v. U. S., 145 Fed. 1022, 74 C. C. A. 322, affirming (C. C.) 140 Fed. 116, we held

---

that these cabretta skins were sheepskins within the meaning of the tariff act. That decision is not necessarily determinative of the classification of the substance that grows on them. The Supreme Court has held that:

"The use of the word 'wool' in the tariff act excluded a substance which, while it was a growth upon a sheepskin, was nevertheless commercially known, designated, and dealt in as * * * hair, * * * which would not be accepted by dealers as a good delivery of wool." Goat & Sheepskin Co. v. U. S., 206 U. S. 194, 27 Sup. Ct. 634, 51 L. Ed. 1022.

The importer's present contention is that the substance on these particular skins is commercially known, designated, and dealt in as hair; but the evidence fails to establish that proposition, which is not surprising, since it would seem that the case was not tried on that theory. Persuasive proof would be found in the testimony of dealers in wool competent to testify as to commercial meanings of words known to that trade at the time of the passage of the tariff act (Act July 24, 1897, c. 11, 30 Stat. 151 [U. S. Comp. St. 1901, p. 1626]). How far short of such proof is the evidence here presented will appear from a brief reference to the testimony of the witnesses.

Of those called by the importer the first was a dealer in goatskins, sheepskins and cabretta skins, who admitted he was not an expert on wool and hair. The second was a manufacturer of kid leather for shoes, buying as his raw material goatskins and cabretta skins, and selling to hair dealers the substance he removes from them. He made no statement as to commercial designation. The third was a hair manufacturer, who bought the substance in question and also low grades of wool. Even if it were conceded that he was qualified to testify, he did not undertake to define any commercial designations in use at and prior to the date of the passage of the ·  ' Skins like these were imported long prior thereto. The fourth    a manufacturer of woolens, who has been buying hair and wool from a time prior to 1897. He said that he had always bought the substance in question as cabretta hair. The fifth is a manufacturer of leather, who has "never been in the wool business"; and the sixth, a broker in skins, hides, and rubber, who was not interrogated as to the commercial meaning of "wool."

Of the government witnesses the first was a wool examiner in the appraiser's stores, whose only personal experience with wool came in such service. He was not asked as to commercial designation at and prior to July 24, 1897. The second was an importer of skins and hides. The third had been an examiner of wool in the appraiser's office for a few months, but had 32 years' experience in the wool business, buying and selling. He was asked whether the growth on some of these skins would be a good commercial delivery for wool; but the question was not directed to the proper period—on and prior · to July 24, 1897.

The proof is wholly insufficient to overcome the presumption that the appraiser acted properly in classifying the growth on these skins as wool of the third class, unwashed.

The decision of the Circuit Court is affirmed.