The judgment of the United States Customs Court is, therefore, *affirmed*.

UNITED STATES *v.* JULIUS WILE SONS & Co. (No. 3786)[1]

United States Court of Customs and Patent Appeals, October 29 1934

*Joseph R. Jackson*, Assistant Attorney General (*Marcus Higginbotham, Jr.*, and *Ralph Folks*, special attorneys, of counsel), for the United States.

*Barnes, Richardson & Halstead* (*Samuel M. Richardson* and *Joseph Schwartz* of counsel) for appellee.

[Oral argument October 2, 1934, by Mr. Folks and Mr. Richardson]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT' Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appellee imported certain merchandise, invoiced as "Sauce Bercy" and "Sauce Bordelaise", at the port of New York, which was classified by the collector as an alcoholic compound or mixture at 20 cents per pound and 25 per centum ad valorem, under the provisions of paragraph 24, Tariff. Act of 1930. It was claimed, in importer's protest, to be dutiable as sauces under the provisions of

---

[1] T. D. 47327.

paragraph 775, as unenumerated manufactured articles under paragraph 1558, or as fish sauce under the provisions of paragraph 720 (c) of said act. No contention was made by the importer in the trial court or here under the two latter claims, the sole reliance made being under said paragraph 775, as sauces. The contesting provisions are as follows:

PAR. 775. * * * sauces of all kinds, not specially provided for; * * * 35 per centum ad valorem * * *.

PAR. 24. * * * all alcoholic compounds not specially provided for, if containing 20 per centum of alcohol or less, 20 cents per pound and 25 per centum ad valorem * * *.

The United States Customs Court sustained the protest under said paragraph 775, and the Government has appealed.

The merchandise before us here is imported in bottles and labeled "Sauce Bercy" and "Sauce Bordelaise." The chemist's analysis attached to the papers in the case, and which analysis is admittedly correct, shows the merchandise known as "Sauce Bercy" to contain, by volume of absolute alcohol, 10.35 per centum, and of salt, by weight, 1.70 per centum. The merchandise known as "Sauce Bordelaise" contains 10.65 per centum of absolute alcohol by volume, and 2 per centum of salt by weight.

It appears from the evidence that the basic material of the Sauce Bordelaise is red wine, and that the basic material of the Sauce Bercy is white wine. The merchandise contains nothing but wine and salt.

It is admitted by counsel for appellee that at the time of the enactment of the Tariff Act of 1930 the imported material did not come within the common meaning of the words "sauce" or "sauces", and that said goods are not used as sauces, but as ingredients in the making of sauces. It was, however, contended in the trial court and here that, at the time of the enactment of said tariff act, the imported merchandise was designated commercially as "sauces" and that, therefore, it should be so classified for duty. To sustain this contention, the importer called and examined 10 witnesses, most of whom were conversant, at least to a degree, with the trade in this particular kind of imported merchandise.

The trial court adopted the view that such commercial designation had been established, and relied, to a large degree, in arriving at this conclusion, upon the authority of *Two Hundred Chests of Tea*, 9 Wheat. 428; *Goat & Sheep Import Co.* v. *United States*, 206 U. S. 194; *Barlow* v. *United States*, 7 Pet. 402; *Curtis* v. *Martin*, 3 How. 106; *Arthur* v. *Cumming*, 91 U. S. 362; *Tyng* v. *Grinnell*, 92 U. S. 467, and *Arthur* v. *Morrison*, 96 U. S. 108.

The Government contends here, as grounds for reversal of the judgment below, first, that the term "sauces", as used in said para-

graph 775, is not capable of proof of commercial designation, but that it must be taken and understood according to its common meaning; second, that even if the Government's position upon this question is unsound, the appellee is not entitled to a judgment here, because it failed to establish a commercial meaning of the term "sauces" contrary to its ordinary meaning. Upon both propositions, the Government has presented numerous authorities and made many comments upon the evidence introduced by the importer in the trial court.

A careful examination has been made of the testimony offered in the trial court. It was incumbent upon the importer, having admitted that the imported material was not "sauces" within the common meaning of that term, to establish, by at least a preponderance of the evidence, that at the time of the enactment of the Tariff Act of 1930 this material was known in the commerce of the country, definitely, uniformly, and generally, as "sauces." This rule is quoted with approval by counsel for appellee, in the following language found in their brief:

We have then to inquire whether the record in the case at bar shows that the merchandise was, at and before the time of the enactment of the Tariff Act of 1930, definitely, uniformly, and generally known in the trade and commerce as "sauce." If it was, it is properly dutiable under paragraph 775, Act of 1930, as "sauces of all kinds, not specially provided for"; if not, it is properly dutiable as assessed.

There can be no misapprehension or misunderstanding about such being the rule in cases of proof of commercial designation.

A brief glance at the cases relied upon by the trial court is, perhaps the best demonstration of the rule. In *Two Hundred Chests of Tea, supra*, the statutory term was "bohea tea", and the question was whether, at the time of the enactment of the act, the imported merchandise was known as "bohea tea." In *Goat & Sheep Import Co., supra*, the question was whether Mocha hair, although a growth upon a sheepskin, was commercially known as "wool" at the time of the enactment of the act. In *Barlow* v. *United States, supra*, the question was whether imported sugars were known as "refined sugars" at the time of the enactment of the act. In *Curtis* v. *Martin, supra*, the question was whether gunny cloth was commercially designated as "cotton bagging" at the time of the enactment of the act. In this last case, Mr. Chief Justice Taney thus stated the underlying principle of all of the decisions as follows:

\* \* \* In the case of the *United States* v. *200 Chests of Tea*, 9 Wheat. 438, the court decided that in imposing duties Congress must be understood as describing the article upon which the duty is imposed according to the commercial understanding of the *terms used in the law*, in our own markets. \* \* \* (The italics are ours.)

In *Arthur* v. *Cumming, supra*, the question was whether the imported goods were commercially known as "burlaps", which was

the statutory term used. Similarly, in *Tyng* v. *Grinnell, supra,* the pertinent inquiry was held to be whether the imported article was known as "wrought-iron tubes", and in *Arthur* v. *Morrison, supra,* the inquiry was whether the imported material, being crepe veils, was commercially known as "silk veils" at the time of the enactment of the act.

In each of these cases it will be observed that the invariable rule was that the proof of commercial designation must be made of the exact statutory word or words. Therefore, the question here was whether the imported goods were known as "sauces", which is the statutory term, at the time of the enactment of the said Tariff Act of 1930.

A brief examination of the testimony appearing in the record shows the following:

The witness, Henry A. Reitz, manager of the groceries department of the appellee, testified as to the sale and the trade in the imported merchandise, and was asked, by counsel, these questions:

Q. Will you state whether, from your knowledge of the trade thus acquired, the word "sauce" had a definite meaning in the trade and commerce of the United States?

The witness, after objections, answered "Yes."

Q. Did it include collective Exhibits 1 and 2 in that definition, the word "sauce" as used generally?—A. Yes.

This witness, on further examination, offered orders received by his house, in which the imported merchandise was uniformly described as "Sauce Bercy" or "Sauce Bordelaise." On cross-examination, this witness testified that these goods were ordered from the foreign shipper and sold by his house under the names of "Sauce Bercy" and "Sauce Bordelaise." Again he stated that the imported merchandise was known in the trade as "wine sauces."

A witness, William James Winselman, was called and examined by the importer. He stated that he had always sold the imported material as "Sauce Bercy" and "Sauce Bordelaise." He was then asked the following questions:

Q. Are you able to state, from your knowledge of the trade, that the trade has ascribed a meaning to the word "sauce" which includes this merchandise?—A. Yes, sir.

Q. Does it include this merchandise?—A. No, sir. This is "Sauce Bercy" or "Sauce Bordelaise."

Q. Is that definite in the trade?—A. Yes, sir.

Q. And uniform?—A. Yes, sir.

Q. Did you understand the question?—A. I don't understand.

Q. I asked you if the word "sauce" as it is known in the trade included collective Exhibits 1 and 2, whether the trade name of "sauce" included collective Exhibits 1 and 2.—A. The trade name of the trade includes "Sauce Bercy" and "Sauce Bordelaise."

Later, counsel for the Government made the following inquiry:

Q. And the trade name is the name that is on the labels of collective exhibits 1 and 2?   *   *   *   A. Yes, sir.

The remaining eight witnesses uniformly stated that the merchandise in question, at or about the time of the enactment of the act, was dealt in and designated as "Sauce Bercy" and "Sauce Bordelaise", and, at times, as "wine sauces." None of these eight witnesses was asked about, or testified concerning, whether the said merchandise was commercially designated as "sauces."

In our view of this testimony, the importer failed to make proof of commercial designation of the word "sauces" different from its ordinary meaning. This was the burden imposed upon it by the law. But one witness, the witness Reitz, testified that the imported material was uniformly, definitely, and generally known commercially as "sauces" at the time of the enactment of the act. We are of opinion that the cross-examination of this witness destroyed the weight of the witness' categorical statement in this respect, and demonstrated that the merchandise was, in fact, not commercially designated as "sauces", but as "Sauce Bercy" and "Sauce Bordelaise." The overwhelming weight of the testimony of importer's witnesses was to the same effect. Hence, it appears quite evident that a commercial designation, as claimed by the appellee, was not established.

The failure of appellee's proof in this respect was due to the inherent difficulties in the case. The appellee was attempting to prove by commercial witnesses that, at the time of the enactment of the Tariff Act of 1930, materials which were not sauces were, in fact, known to the trade as "sauces." That they were known as "wine sauces", or "Sauce Bercy" or "Sauce Bordelaise" did not help the situation any. They might well have been so known and at the same time have not been designated by the trade as "sauces." The Congress, in its enumeration of articles to be included within said paragraph 775, did not say "wine sauces" or "Sauce Bordelaise" or "Sauce Bercy", but said "sauces." The importer could not escape the classification unless he could prove, by a preponderance of the evidence, that the goods were commercially, definitely, uniformly, and generally known, at the time of the enactment of the act, under the exact term used in the statute, namely, "sauces." This the importer failed to do.

We have, on numerous occasions, found it necessary to make similar holdings. The following cases are typical: *Hampton, Jr.* v. *United States*, 12 Ct. Cust. Appls. 490, T. D. 40695; *United States* v. *Schade & Co.*, 16 Ct. Cust. Appls. 366, T. D. 43092, and cases therein cited.

It is stipulated herein that the merchandise is identical with that held by us in *Arnold & Co.* v. *United States*, 20 C. C. P. A. (Customs)

417, T. D. 46259, involving no issue of commercial designation, to be properly classified as an alcoholic compound under said paragraph 24.

In view of the fact that the importer failed to make sufficient proof of commercial designation, it becomes unimportant to inquire whether the term "sauces", as used in paragraph 775, is or is not capable of proof of commercial designation.

The judgment of the United States Customs Court is *reversed*.